1
2
3
4
5
6
7

8    IN THE UNITED STATES DISTRICT COURT

9    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   CHARLES NEWMAN,                    )
                                        )    No. C 06-04749 JW (PR)
12              Petitioner,             )
                                        )    ORDER DENYING PETITION FOR
13       vs.                            )    A WRIT OF HABEAS CORPUS
                                        )
14   JAMES HOREL, Warden,               )
                                        )
15              Respondent.             )
                                        )
16   _____

17

18          Petitioner, a state prisoner currently incarcerated at the Folsom State Prison in

19   Represa, California, has filed a pro se petition for a writ of habeas corpus pursuant to

20   28 U.S.C. § 2254, challenging a prison disciplinary hearing at Pelican Bay State

21   Prison ("PBSP") that resulted in the forfeiture of good time credits.  Finding the

22   petition stated cognizable claims under § 2254, the Court ordered respondent to

23   show cause why the petition should not be granted.  Respondent filed an answer, and

24   petitioner filed a traverse.

25

26                            **BACKGROUND**

27          On April 27, 2005, while petitioner was incarcerated in the administrative

28   segregation unit at PBSP, petitioner was placed in a single man holding cage to

     Order Denying Petition for a Writ of Habeas Corpus
     G:\PRO-SE\SJ.JW\HC.06\Newman04749_denyHC.wpd

1  await escort to the Institutions Classification Committee ("ICC"). (Pet. 7.)

2  According to the petition, Officer D. Harlow came to petitioner's cell to escort

3  petitioner to ICC. Id. When Officer Harlow ordered petitioner to turn around and

4  back out of the cell, petitioner continued to face Officer Harlow and told her, "Open

5  up the door. I will back out." (Pet. 8.) Officer Harlow repeated the order to turn

6  around, but petitioner did not comply. Id. Another officer, Sergeant C. McGuyer[1],

7  was summoned. Under Sergeant McGuyer's direction, petitioner backed out of the

8  cell and was escorted to ICC. Id. On April 29, 2005, petitioner was issued a CDC

9  Form 115 Rules Violation Report ("RVR") by Officer Harlow, charging petitioner

10  with refusal to obey a direct order. (Pet. Ex. A at 1.)

11  Prior to the hearing held on May 27, 2005, petitioner was provided with

12  notice of the hearing and the charges against him. (Pet. Ex. A at 3.) At the hearing,

13  petitioner pled not guilty, but based on the evidence presented, including the RVR,

14  the testimonies of Officer Harlow and Sergeant McGuyer, and petitioner's own

15  testimony, petitioner was found guilty of the charged offense and assessed a thirty

16  day forfeiture of good time credits. Id. No investigative employee ("IE") was

17  assigned to petitioner's case, and no staff assistant was assigned to petitioner at the

18  hearing.[2] Id. Petitioner requested Officer Harlow and Sergeant McGuyer as

19  witnesses at the hearing. Id.

20  Petitioner administratively exhausted his remedies through the prison appeals

21  process. Petitioner's state habeas petition was summarily denied by the California

22  Supreme Court on July 12, 2006. (Pet. Ex. E at 2.) Petitioner filed the instant

23  federal petition on August 4, 2006.

24

25  [1] Petitioner spelled this officer's name as "McGuire" while all documents
prepared by PBSP prison officials spell this officer's name as "McGuyer."

26  Petitioner has not disputed that this officer is the same individual he refers to in his
petition.

27  [2] A staff assistant was not assigned because petitioner spoke English, was

28  literate, and petitioner confirmed that staff assistance was not necessary. (Pet. Ex. A
at 3.)

Order Denying Petition for a Writ of Habeas Corpus
G:\PRO-SE\SJ.JW\HC.06\Newman04749_denyHC.wpd        2

**DISCUSSION**

A.      Standard of Review

A district court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); <u>Rose v. Jodges</u>, 423U.S. 19, 21 (1975).  A claim which, if successful, would result in the restoration of time credits is properly brought in habeas because success on such claims could result in the inmate's earlier release from prison.

B.      Petitioner's Claims

Petitioner claims the following constitute due process violations at his disciplinary hearing as grounds for federal habeas relief: 1) he was denied the right to have witnesses appear in his defense; 2) he was denied the right to have an IE assist in his defense; 3) the RVR was issued in retaliation for petitioner's prior grievances against prison officials; and 4) the hearing was fundamentally unfair because the senior hearing officer (the "SHO") was biased against petitioner.  Of these four claims, claims 1 and 2 allege violations of procedural due process mandated by <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).

1– 2.   Due Process

Due process requires five procedural protections in connection with prison discipline that results in the forfeiture of time credits.  <u>Wolff</u>, 418 U.S. at 556. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense."  <u>Id.</u> at 564.  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]."  <u>Id.</u>  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action."  <u>Id.</u> (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972)).

1    Fourth, "the inmate facing disciplinary proceedings should be allowed to call

2    witnesses and present documentary evidence in his defense when permitting him to

3    do so will not be unduly hazardous to institutional safety or correctional goals." Id.

4    at 566. Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity

5    of the issues makes it unlikely that the inmate will be able to collect and present the

6    evidence necessary for an adequate comprehension of the case, he should be free to

7    seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the

8    staff or from a[n] . . . inmate designated by the staff." Wolff, 418 U.S. at 570.

9          The record reveals, and petitioner does not dispute, that he received written

10   notice of the charges well over 24 hours prior to the hearing and that there was a

11   written statement as to the findings and reasoning of the disciplinary decision. (Pet.

12   Ex. A at 3.) Therefore, the first three procedural protections under Wolff were

13   satisfied in petitioner's case. See Wolff, 418 U.S. at 564.

14         Petitioner's first claim regarding witnesses arises under Wolff's fourth

15   requirement that a prisoner should be allowed to call witnesses in his defense. Id.

16   However, the right to present a defense is not absolute and prison officials retain

17   "the necessary discretion to keep the hearing within reasonable limits." Id.

18   Petitioner claims that he was not allowed to present as a witness Correctional Officer

19   Tackett at the hearing. (Pet. 11.) Petitioner claims that Officer Tackett was

20   responsible for placing petitioner in the holding cell prior to the disciplinary

21   incident. However there is no evidence in the record showing that petitioner

22   requested Officer Tackett as a witness or that such a request was denied. The record

23   shows that at the time petitioner received the RVR, he requested "Sergeant

24   McGuire" as witness for the hearing. (Pet. Ex. A. at 2.) This request was granted,

25   and the record shows that Sergeant McGuyer appeared as a witness at the hearing.

26   (Pet. Ex. A at 3.) Petitioner does not dispute that the officer he requested was the

27   same officer who appeared as a witness. See *supra* note 1. At the hearing,

28   petitioner requested Officer Harlow as a witness, and this request was also granted.

Order Denying Petition for a Writ of Habeas Corpus
G:\PRO-SE\SJ.JW\HC.06\Newman04749_denyHC.wpd          4

1   Id. Petitioner's claim that he was denied his right to have witnesses appear in his

2   defense is without merit.

3          Petitioner's second claim is that due process was violated when he was

4   denied his right to an IE to assist in his defense.  Petitioner claims that an IE should

5   have been appointed to investigate whether there existed a policy requiring inmates

6   to turn around to have their restraints checked before being removed from a cell.

7   Wolff states that whether an IE should be appointed, which is the fifth procedural

8   protection, depends on whether "an illiterate inmate is involved... or whether the

9   complexity of the issue makes it unlikely that the inmate will be able to collect and

10  present the evidence necessary for an adequate comprehension of the case." 418

11  U.S. at 570.  The record shows that petitioner is not illiterate, and that an IE was not

12  initially assigned because the issues were not complex and the available information

13  was sufficient. (Pet. Ex. A at 3.)  The IE assignment was ultimately denied because

14  petitioner "failed to show an assigned IE would obtain any additional, relevant

15  information required for his defense or that his housing restriction prevented

16  [petitioner] from obtaining his own information."  Id.

17         Petitioner's claim that the failure to assign an IE to his case constitutes a

18  violation of due process is without merit.  Petitioner has failed to demonstrate how

19  he was unable to collect information on his own or that the information he would

20  have obtained through an IE was relevant to the disciplinary proceedings.  When

21  asked at the hearing why he wanted an IE, petitioner stated, "Fuck your dead

22  momma Mother Fucker[].  I'm a worrier and I am going to die a worrier." (Pet. Ex.

23  A at 3.)  Because petitioner provided no reason at the hearing why an IE was

24  necessary, it cannot be said that the SHO's denial of the request was unreasonable.

25  Furthermore, although petitioner claims in the petition that an IE was necessary to

26  investigate whether there existed a policy that prisoner's restraints be checked before

27  removal from a holding cell, petitioner still fails to show how the existence or non-

28  existence of such a policy was relevant to the issues of the proceedings.  Therefore,

1    it cannot be said that he was denied due process by not having an IE appointed to

2    assist in gathering irrelevant information.  Consequently, petitioner was afforded all

3    the procedural due process mandated by Wolff.  See 418 U.S. at 570.

4         Additionally, the revocation of good-time credits does not comport with the

5    minimum requirements of procedural due process in Wolff unless the findings of the

6    prison disciplinary board are supported by some evidence in the record.

7    Superintendent v. Hill, 472 U.S. 445, 454 (1985).  The standard for the modicum of

8    evidence required is met if there was some evidence from which the conclusion of

9    the administrative tribunal could be deduced.  See id. at 455.  An examination of the

10   entire record is not required nor is an independent assessment of the credibility of

11   witnesses or weighing of the evidence.  See id.  The relevant question is whether

12   there is any evidence in the record that could support the conclusion reached by the

13   disciplinary board.  See id.  The Ninth Circuit additionally has held that there must

14   be some indicia of reliability of the information that forms the basis for prison

15   disciplinary actions.  See Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987).

16        Here, the evidence of guilt consisted of a detailed statement by the reporting

17   officer in the RVR, the testimonies of Officer Harlow and Sergeant McGuyer, and

18   petitioner's own testimony at the hearing.  (Pet. Ex. A at 4.)  Officer Harlow's

19   testimony in the RVR stated that she gave several orders to petitioner to turn around

20   so she could inspect his handcuffs, and that petitioner refused to comply.  Id.  She

21   further testified that Sergeant McGuyer came to the cell and gave petitioner the same

22   order several times before petitioner complied.  Id.  At the hearing, Officer Harlow

23   gave additional testimony that the reason she wanted petitioner to turn around was to

24   inspect the handcuffs since she had not escorted petitioner to the holding cell and did

25   not know how long he had been there.  Id.  She also stated that it was common

26   practice to inspect restraints prior to removing inmates from the holding cells.  Id.

27   Sergeant McGuyer testified at the hearing that she was summoned to the holding cell

28   by another officer, and that she gave petitioner several orders to comply before

Order Denying Petition for a Writ of Habeas Corpus
G:\PRO-SE\SJ.JW\HC.06\Newman04749_denyHC.wpd        6

1    petitioner was removed from the cell, which is consistent with Officer Harlow's

2    testimony. Id. Furthermore, petitioner's testimony at the hearing that he had called

3    Sergeant McGuyer himself was proven to be false, as Sergeant McGuyer had

4    already testified that she had been summoned by another officer and not by

5    petitioner. Id. Accordingly, there was sufficiently reliable evidence to find

6    petitioner guilty of the charged offense to satisfy the requirements of due process.

7    See Hill, 472 U.S. at 454.

8         3-4.    Remaining Claims

9         Petitioner's last two claims – that the RVR was issued in retaliation for

10   petitioner's previous grievances against prison officials and that the SHO was biased

11   against him – are without merit. There is no evidence that Officer Harlow was

12   aware of petitioner's prior grievances and complaints at the time she issued the

13   RVR, or that the RVR was issued in retaliation because of those prior grievances.

14   Nor is there any evidence that the SHO made a predetermination of guilt before the

15   hearing based on petitioner's previous complaints. Petitioner's conclusory

16   allegations of violations of his federal rights, which are not supported by specific

17   facts, do not provide a basis for habeas corpus relief. See Jones v. Gomez, 66 F.3d

18   199, 205 (9th Cir. 1995); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

19   Furthermore, a prisoner's right to due process is violated "only if he [is] not

20   provided with process sufficient to meet the Wolff standard." Walker v. Sumner, 14

21   F.3d 1415, 1420 (9th Cir. 1994). Here, petitioner was afforded all the procedural

22   protections mandated by Wolff. See *supra* at 6. Even assuming petitioner's

23   allegations were true, there is some evidence on the record to support the guilty

24   finding regardless of the alleged retaliatory motives and bias. See Hill, 472 U.S. at

25   454.

26        Because the procedural protections set forth in Wolff, 418 U.S. at 556, were

27   met in this case, and the discipline was supported by "some evidence," see Hill, 472

28   U.S. at 454, there was no violation of petitioner's right to due process. Accordingly,

Order Denying Petition for a Writ of Habeas Corpus
G:\PRO-SE\SJ.JW\HC.06\Newman04749_denyHC.wpd        7

petitioner is not entitled to habeas relief on any of the claims presented in the instant petition.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED on the merits. The clerk shall terminate any pending motions.

DATED: __December 18, 2007____    _____
JAMES WARE
United States District Judge

**United States District Court**
For the Northern District of California